**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CR-041-JFH |
| BYRON CORDELL THOMAS, | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court are three (3) motions filed by Defendant Byron Cordell Thomas: (1) an omnibus motion in limine ("Motion in Limine") [Dkt. No. 67]; (2) an objection and motion to exclude expert witness testimony ("Motion to Exclude") [Dkt. Nos. 68, 74]; and (3) a motion to suppress evidence ("Motion to Suppress") [Dkt. No. 69]. The Government filed responses to each of Defendant's motions. Dkt. Nos. 70, 69, 72. After seeking leave from the Court, Defendant filed a reply in support of his Motion to Exclude. Dkt. No. 79. The Court will address all pending motions in this Opinion and Order.

**BACKGROUND**

**I.   Procedural Background**

On February 6, 2023, Defendant was indicted on one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Dkt. No. 3. Subsequently, four (4) superseding indictments were filed. *See* Dkt. Nos. 35, 42, 56, 83. The current fourth superseding indictment charges Defendant with twelve (12) counts:

- One (1) count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8);
- Two (2) counts of witness tampering by corrupt persuasion in violation of 18 U.S.C. § 1512(b)(1);

- Four (4) counts of transporting an individual for prostitution, in violation of 18 U.S.C. § 2421;
- Two (2) counts of coercion and enticement to engage in prostitution, in violation of 18 U.S.C. § 2422(a); and
- Three (3) counts of sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1591.

Dkt. No. 83. This case is slated for trial to begin on July 31, 2023. Dkt. No. 63.

## II.  Factual Background

### a.  Charged Conduct

In November 2022, the Tulsa Police Department's Human Trafficking and Vice Unit ("Vice Unit") conducted a prostitution sting operation. Dkt. No. 71 at 3. As part of that operation, the Vice Unit responded to a prostitution advertisement for "Kandi K." and arranged for an undercover officer to meet her in a room at the Motel 6 near 41st Street and Memorial in Tulsa, Oklahoma. *Id*. At the designated meeting time, the Vice Unit observed a dark-colored SUV driven by Defendant pull into the Motel 6 parking lot. *Id*. Defendant was known to Vice Unit officers from past investigations regarding prostitution, firearms, and drug distribution. *Id*.

As a result of the November 2022 sting operation, "Kandi K." was arrested and issued a municipal citation for prostitution. Dkt. No. 71 at 3. "Kandi K." was determined to be Christine Zickefoose ("Zickefoose"). *Id*. Zickefoose denied working with anyone or being trafficked. However, the Vice Unit obtained search warrants for her cellphone, her Facebook page, and, later, Defendant's Facebook page and discovered communications between Zickefoose and Defendant related to prostitution. *Id*. Specifically, messages were discovered wherein Zickefoose acknowledged that she worked for Defendant as a prostitute and indicated that Defendant had transported her out of state to work as a prostitute. *Id*. at 3-4.

On December 5, 2022, the Vice Unit responded to another prostitution advertisement for "Kandi K." and again arranged for an undercover officer to meet her at the same Motel 6 in Tulsa,

Oklahoma. Dkt. No. 71 at 4. As the Vice Unit conducted surveillance in the Motel 6 parking lot, they noticed Defendant sitting in a parked Buick LaCrosse. *Id*. The undercover officer confirmed with "Kandi K." that he had arrived at the Motel 6 and she indicated that he should meet her in room number 814. *Id*. Soon thereafter, the Vice Unit observed the LaCrosse drive through the parking lot to move closer to room number 814. *Id*. The LaCrosse then drove back across the parking lot to its original parking spot. *Id*. Defendant then exited the LaCrosse and entered a Grand Marquis also parked in the parking lot. Dkt. No. 71 at 4. Defendant moved around in the front seat of the Grand Marquis before getting out and walking back toward the LaCrosse. *Id*. at 4. At this time, the undercover officer was still attempting to make contact with "Kandi K." *Id*. at 5. Therefore, in consideration of officer and public safety, the Vice Unit decided to approach Defendant, displaying their badges and calling to Defendant by name. *Id*. When Defendant saw the officers, he fled, reached for his waistband, and attempted to hide behind a stairwell. Dkt. No. 71 at 5. After the short pursuit, Defendant was detained. *Id*. Two (2) sets of car keys and a Ruger 9-millimeter pistol were found on the pavement near where Defendant had hidden behind the stairwell. *Id*.

### b. Searches

After Defendant was detained and placed in a police vehicle, officers approached the LaCrosse and the Grand Marquis and discovered a two-year-old child in a car seat, alone inside the LaCrosse. *Id*. Defendant confirmed that the child was his son and stated that he could arrange to have his sister come pick him up. Dkt. No. 71 at 5. Officers entered the LaCrosse to check on the child's welfare. *Id*.

Defendant was then arrested and charged in Tulsa County Case No. CF-2022-4535 with aiding in prostitution, destroying evidence, child neglect, possession of a firearm after former

conviction of a felony, and resisting arrest. *Id*. The LaCrosse and Grand Marquis were towed from the scene and impounded pending criminal forfeiture under Oklahoma state law. *Id*. at 5-6. Prior to being towed, the vehicles were searched pursuant to Tulsa Police Department Policy. Dkt. No. 71 at 5-6. Two cellphones and paperwork for Defendant, Zickefoose, and M.N. were discovered in the vehicles. *Id*. at 6; Dkt. No. 69 at 2. Law enforcement later obtained search warrants for the cellphones. Dkt. No. 71 at 6.

### c. Defendant's Previous Convictions

Defendant's criminal history consists of nine (9) prior convictions. The prior convictions include:

| Case No. | Charges | Date of Conviction |
|---|---|---|
| Sedgwick County, KS Case No. 08CR1283 | Aggravated Assault | 11/06/2008 |
| Sedgwick County, KS Case No. 08CR1283 | Aggravated Assault | 11/06/2008 |
| Sedgwick County, KS Case No. 08CR1256 | Aggravated Assault | 11/06/2008 |
| Sedgwick County, KS Case No. 10CR0807 | Possession of Controlled Substances | 08/05/2010 |
| Sedgwick County, KS Case No. 14CR3191 | Criminal Possession of a Weapon by a Convicted Felon | 11/24/2015 |
| Sedgwick County, KS Case No. 14CR3191 | Criminal Possession of a Weapon by a Convicted Felon | 11/24/2015 |
| Sedgwick County, KS Case No. 15CR0271 | Attempted Robbery | 03/09/2016 |
| Sedgwick County, KS Case No. 15CR0271 | Attempted Robbery | 03/09/2016 |
| Tulsa County, OK CF-2019-5866 | Possession of Firearm after Former Conviction of a Felony | 06/02/2022 |

Dkt. No. 67 at 3.

## AUTHORITY AND ANALYSIS

**I. Defendant's Omnibus Motion in Limine [Dkt. No. 67]**

Defendant seeks to exclude four (4) categories of evidence:

4

1. Evidence of Defendant's prior convictions;
2. Testimony that Defendant was known to law enforcement to carry firearms;
3. Testimony or reference to photographs recovered from Defendant's cell phone depicting other firearms; and
4. Testimony concerning Defendant's alleged gang affiliation.

Dkt. No. 67 at 1. The Government filed a response in partial opposition, stating that it does not intend to introduce evidence described in categories two (2) through four (4) at this time.[1] Dkt. No. 70. Therefore, the portion of Defendant's Motion in Limine which seeks to exclude testimony that Defendant was known to law enforcement to carry firearms, testimony or reference to photographs recovered from Defendant's cell phone depicting other firearms, and testimony concerning Defendant's alleged gang affiliation is denied as moot. However, should the Government decide during trial that it seeks to introduce this evidence for any reason, the Government should inform the Court outside the presence of the jury so that the Court may properly determine its admissibility. The Court will address the remaining evidence.

   a. **Evidence of Defendant's Prior Convictions**

Evidence of a prior felony conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). However, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," the probative value must substantially outweigh the prejudicial effect and the offering party must give its adverse party reasonable written notice of its intent. *Id*. at (b). A "special balancing test" is used for defendant-

---

[1] The Court notes that the first page of Defendant's Motion in Limine states that "[t]he Government opposes the relief requested in this Motion" in compliance with the requirements of LCrR47-4. Dkt. No. 67 at 1. However, in light of the Government's response in *partial* opposition, which plainly states that it does not seek to introduce some of the evidence described in the Motion in Limine, it is doubtful that the parties thoroughly conferred regarding the contents of the Motion in Limine as contemplated by the spirit of LCrR47-4. Moving forward, the parties should comply with both the letter and spirit of LCrR47-4.

5

witnesses because these litigants face "a unique risk of prejudice—i.e., the danger that convictions that would be excluded under Rule 404 will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes." *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (quoting Fed. R. Evid. 609, advisory committee's notes to the 1990 amendments). This balancing test has five factors:

> (1) the impeachment value of the defendant's prior crimes;
> (2) the dates of the convictions and the defendant's subsequent history;
> (3) the similarity between the past crime and charged crime;
> (4) the importance of the defendant's testimony; and
> (5) the centrality of the defendant's credibility at trial.

*Id*.

### i. Consideration of the Smalls factors

#### 1. Impeachment Value

"In evaluating the first factor, the impeachment value of the defendant's prior crimes, a prior conviction is more likely to be admissible where it involves a crime that bears on defendant's credibility." *United States v. Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1-2 (N.D. Okla. June 4, 2021). However, even if a defendant's prior convictions do not involve dishonesty or false statement, a defendant still may be impeached. *Id*. (citing *United States v. Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8 (N.D. Okla. Apr. 3, 2015), *aff'd*, 659 F. App'x 461 (10th Cir. 2016) ("[I]t is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial."); *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977)).

Defendant's prior convictions for aggravated assault do not involve characteristics that go to Defendant's capacity for truthfulness. Crimes of violence, generally, have little impeachment value. *See Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1, *2 (internal citations omitted). Likewise, Defendant's prior convictions for felon in possession of a firearm and

6

possession of controlled substances do not have the impeachment value of a crime involving dishonesty. *See e.g., United States v. Phillips*, 487 F.Supp.3d 1126, 1130 (D.N.M. 2020). Therefore, this factor does not particularly weigh in favor of admitting Defendant's prior convictions for aggravated assault, felon in possession of a firearm, and possession of controlled substances. However, it does not particularly weigh against their admission either. *See Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1-2.

Defendant's convictions for attempted robbery, however, may be probative of his veracity. *See United States. v. Verner*, 15-CR-039-CVE, 2015 WL 1528917 at *9 (N.D. Okla. Apr. 3, 2015) (unpublished) (citing *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir.1995); *United States v. Brown*, 956 F.2d 782, 787 (8th Cir.1992)). Therefore, this factor weighs slightly in favor of admitting Defendant's prior convictions for attempted robbery for purposes of impeachment.

### 2. Temporal Proximity

Convictions more than ten years old are presumptively excluded, while convictions within the preceding ten years are considered on a case-by-case basis. *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2. However, the "probative value of an older conviction may remain undiminished if the defendant was recently released from confinement or has multiple intervening convictions, both of which could suggest his character has not improved." *Id*. (internal citations omitted). This factor weighs in favor of admissibility, as both Defendant and the Government agree that Defendant's prior convictions fall within the ten-year timeframe. Dkt. No. 67 at 4-5; Dkt. No. 70 at 4.

### 3. Similarity

"The third factor, which compares the similarity of the current charged crime to the prior conviction, weighs against admitting the prior conviction for impeachment if the crimes are

similar." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2 (internal citations omitted). "The greater the similarity of the charged crime to the past crime, the higher the likelihood that a jury will be tempted to infer criminal propensity, rather than use the information for its intended purpose–impeachment of credibility." *Id*. (citing *United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014); *United States v. Chaco*, 801 F. Supp. 2d 1217, 1228 (D.N.M. 2011) ("The caselaw suggests that past felonies are most prejudicial in cases where the felonies are most similar to the crimes charged."); *United States v. Willis*, No. 14-CR-64-JED, 2014 WL 2589475, at *2 (N.D. Okla. June 10, 2014) (same)).

Count One in this matter, felon in possession of a firearm, is identical to Defendant's three previous felon in possession of a firearm convictions. Two of the previous convictions arise out of Sedgwick County, Kansas, Case No. 14CR3191. Dkt. No. 67 at 3. The Government agrees that the convictions arising out of this case are "inappropriate to use for impeachment under Rule 609" and, therefore, does not seek to introduce the felon in possession of a firearm convictions arising out of the Kansas case. Dkt. No. 70 at 5.

The other previous felon in possession conviction arises out of Tulsa County, Oklahoma, Case No. CF-2019-5866. Dkt. No. 67 at 3. The Government states that Defendant is currently facing revocation on his suspended sentence in the Tulsa County case based upon the charged conduct in the present case. Dkt. No. 70 at 5. The Government seems to argue that because of the revocation, this conviction "should be allowed since it would bear on his truthfulness and veracity." *Id*. The Government does not provide any case law to support this argument but instead offers to impeach only "with the date of his conviction and the current sentence," and to exclude naming the specific charge. *Id*. The Court has found no support for the Government's argument regarding the revocation's bearing on Defendant's capacity for truthfulness and, likewise, has

8

found no support for the Government's proposed "compromise" to exclude the name of the charge.² Regardless of the revocation, the Tulsa County conviction, like the Sedgwick County, Kansas convictions, is identical to the felon in possession of a firearm charge in this case. Therefore, this factor weighs against admitting the Tulsa County conviction for felon in possession of a firearm for purposes of impeachment.

Regarding the other previous convictions, Defendant argues that they are similar to the charged conduct because the conduct giving rise to the previous convictions is often associated with the charged conduct. Dkt. No. 67 at 5-6. For example, Defendant contends that the Government's expert will likely testify that "it is common for men that engage in soliciting women for money to carry firearms" and to use violence against the women that they are soliciting. *Id*. Therefore, Defendant argues that the jury would "struggle in not using the convictions[, such as aggravated assault,] as propensity evidence." *Id*. at 6. The Court disagrees. The relevant question is not whether individuals who engage in one type of crime typically engage in elements of another type of crime. The question is whether the crimes themselves are similar. Here, the present charges of felon in possession of a firearm, witness tampering, sex trafficking, and transportation, coercion, and enticement to engage in prostitution are plainly dissimilar to aggravated assault, possession of controlled substances, and attempted robbery. Therefore, this factor weighs in favor of admitting Defendant's prior convictions for aggravated assault, possession of controlled substances, and attempted robbery for purposes of impeachment.

---

² Indeed, the Government acknowledges that this is "contrary to the general practice of impeachment under 609." Dkt. No. 70 at 5.

*4. Importance of Testimony*

"In considering the fourth factor, the importance of Defendant's testimony, the Court must determine whether the apprehension of potential impeachment by prior convictions will cause Defendant to abstain from testifying, thus damaging his right to a full defense." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *3 (internal citations omitted). "If the prior conviction is incredibly damaging or prejudicial, that counsels against admitting the prior conviction." *Id*.

First, because of the identical nature of Defendant's previous felon in possession convictions and the instant felon in possession charge, the Court finds that it would be prejudicial to admit the prior felon in possession convictions. This factor weighs against admitting Defendant's previous felon in possession convictions.

This factor also weighs slightly against admitting Defendant's previous aggravated assault convictions. This is because crimes which insinuate violence are often more prejudicial than crimes which do not.

However, the Court does not find Defendant's previous convictions for possession of controlled substances and attempted robbery to be particularly damaging or prejudicial in light of Defendant's present charges for felon in possession of a firearm, witness tampering, sex trafficking, and transportation, coercion, and enticement to engage in prostitution. Objectively, drug possession and attempt charges are less prejudicial in general when compared to charges involving firearms, witness tampering, sex trafficking, prostitution. Therefore, this factor weighs in favor of admitting Defendant's prior convictions for possession of controlled substances and attempted robbery for purposes of impeachment.

*5. Centrality of Credibility*

"When evaluating the final factor, the centrality of defendant's credibility at trial, the Court must consider whether defendant's credibility is a material consideration for the jury. Impeachment by prior conviction is not as important if defendant's anticipated testimony will not be central to a jury determination–*e.g.,* if defendant's testimony is corroborated by other sources." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *3. By contrast, "where a case is reduced to a swearing contest between witnesses, the probative value of a conviction is increased." *Id*. (citing *Caldwell*, 760 F.3d at 288).

Defendant concedes and the Government agrees that Defendant's credibility is a central issue in this case, especially in light of the witness tampering charges. Dkt. No. 67 at 7; Dkt. No. 70 at 6. This factor weighs in favor of admitting Defendant's prior convictions for felon in possession of a firearm, aggravated assault, possession of controlled substances, and attempted robbery for purposes of impeachment.

### ii. Rule 609(a)(1)(B) Balancing

Following a review of *Smalls* factors, the Court must determine "whether, in light of those factors, the probative value of the evidence outweighs its prejudicial effect." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *4 (citing Fed. R. Evid. 609(a)(1)(B)). After reviewing the *Smalls* factors, the Court finds that the probative value of Defendant's prior convictions for possession of controlled substances and attempted robbery outweigh any potential prejudicial effect. Specifically, none of the factors weigh against admitting these prior convictions. For this reason, the Court will allow the Government to introduce evidence of Defendant's prior convictions for possession of  controlled substances and attempted robbery for purposes of impeachment under Fed. R. Evid. 609.

The Court finds that after reviewing the *Smalls* factors, the probative value of Defendant's prior convictions for aggravated assault do not outweigh the potential prejudicial effect. Two factors weigh against admitting these prior convictions: impeachment value and importance of testimony. The Court recognizes that "it is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2 (citing *Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8). However, the Court is mindful that aggravated assault charges may be more prejudicial because they imply an act of violence. On balance, the Court finds that that the probative value of the aggravated assault convictions does not outweigh the potential prejudicial effect in this case.

Further, upon review of the *Smalls* factors, the Court finds that the probative value of the felon in possession of firearm convictions does not outweigh the prejudicial effect. Specifically, because Defendant's prior convictions for felon in possession of a firearm are identical to the charged crime of felon in possession of a firearm in this case, the Court finds that admitting these convictions would be highly prejudicial and would outweigh any probative value. This is especially true in light of the fact that the Court will allow the introduction of evidence of Defendant's other prior felony convictions noted above.

For these reasons, Defendant's Motion in Limine is GRANTED IN PART AND DENIED IN PART. It is granted in part in that the Court will not allow the Government to introduce evidence of Defendant's prior convictions for aggravated assault and felon in possession of a firearm. It is denied in part in that the Court will allow the Government to introduce evidence of Defendant's prior convictions for possession of controlled substances and attempted robbery for purposes of impeachment under Fed. R. Evid. 609. The remainder of Defendant's Motion in

Limine is denied as moot because, as discussed above, the Government does not intend to introduce testimony that Defendant was known to law enforcement to carry firearms, testimony or reference to photographs recovered from Defendant's cell phone depicting other firearms, or testimony concerning Defendant's alleged gang affiliation at this time.

## II. Defendant's Objection to Expert Qualifications and Motion to Exclude Expert Witness Testimony [Dkt. Nos. 68, 74]

Defendant seeks to exclude testimony from the Government's expert witness, Tulsa Police Department Investigator Robert N. David ("Officer David"). Dkt. No. 68 at 1. Specifically, Defendant objects to Officer David's testimony because he argues that "[Officer David] is not qualified to opine on the topic of commercial sex and human trafficking and such testimony is irrelevant, cumulative, and not helpful for the jury." *Id*. The Government filed a response in opposition. Dkt. No. 72. The Government supplemented its response with its expert notice for Officer David, as well as its expert notice for Federal Bureau of Investigation Special Agent Carrie J. Landau ("Agent Landau"), following the Court's minute order directing it to do so.[3] Additionally, Defendant filed a reply after seeking leave from the Court. Dkt. No. 79.

### a. *Daubert*

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion when:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

---

[3] While the Court appreciates that expert notices were exchanged among the parties in a timely manner, the Court reminds the parties that pursuant to its scheduling order, the parties are directed to *file* all notices, including expert notices. Dkt. No. 63 at 3.

>(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475-GKF, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999)).

"First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278. The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

"Daubert does not mandate an evidentiary hearing." *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)); *see also Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167 ("The trial court must have the . . . latitude . . . to decide whether or when special briefing or other proceedings are needed to investigate reliability"). Here, the Court finds that a hearing is not necessary and it will perform its *Daubert* and Rule 702 analysis based on the parties' briefing. Therefore, as an initial matter, Defendant's request for a *Daubert* hearing [Dkt. No. 68 at 3] is denied.

### i. Qualifications

The first step in the *Daubert* inquiry is to determine whether Officer David is qualified by knowledge, skill, experience, training, or education to render an opinion. *Lippe*, 287 F. Supp. 3d

at 1277-78.  An expert's qualifications must provide "a foundation for a witness to answer a specific question." *Id*. at 1279 (quotation and citation omitted).  An expert's qualifications must be both "(i) adequate in general, qualitative sense (i.e., knowledge, skill, experience, training, or education as required by Rule 702) and (ii) specific in the matters he proposes to address as an expert." *Id*.  An expert cannot provide an opinion regarding matters on which his background and training do not provide a proper foundation. *See English v. Estes Express Lines*, No. 14-CV-70, 2018 WL 1136058, at *6 (C.D. Cal. Feb. 15, 2018).

In its expert notice, the Government states that Officer David will testify "as an expert in commercial sex and human trafficking investigations." Dkt. No. 77-2 at 4.  Specifically, Officer David will testify regarding common trafficking advertisement practices and common behavior of traffickers in providing security and insulating themselves from liability. *Id*. at 4-5.

Officer David has been an investigator with the Tulsa Police Department's Human Trafficking and Vice Unit since 2018.  Dkt. No. 77-2 at 1.  During this time, he has conducted human trafficking and prostitution investigations at the both the state and federal level, including "numerous interviews with victims of human trafficking, pandering, and panders." *Id*. at 1, 4.  Additionally, Officer David has attended four (4) Annual Mid-West Vice Investigators Summits, as well as the International Association of Human Trafficking Investigators conference in 2021. *Id*. at 2.  This is sufficient for the Court to conclude that Officer David is qualified by knowledge, skill, experience, training, and education to testify as an expert in commercial sex and human trafficking investigations.

     **ii.**  **Relevancy**

After concluding Officer David is qualified as an expert, the Court must evaluate whether his opinion is relevant. *Lippe*, 287 F. Supp. 3d at 1278.  Evidence or testimony must "assist the

trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations and citations omitted). "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) (internal citation omitted).

Defendant argues that Officer David's testimony encompasses sex trafficking information that is "within the common knowledge and experience of a juror" and, therefore, would not be helpful to the trier of fact. Dkt. No. 68 at 3. This Court disagrees. While jurors may have knowledge of sex trafficking in general, the particularized nuances of sex trafficking, including advertising practices and typical behaviors of traffickers, are not within a layperson's common knowledge. Indeed, most laypersons obtain information about sex trafficking from mainstream media, which depicts many misconceptions and dramatizations. The Court finds that expert testimony would be helpful to the jury in this case to understand the evidence and to determine issues of fact.

The Court also disagrees with Defendant's assessment that Officer David's testimony will be cumulative with the testimony of Agent Landau. While aspects of Officer David's testimony may potentially overlap with Agent Landau's testimony, their opinions are helpful in different ways. Officer Landau offers a scientific and scholarly perspective on sex trafficking practices in general, including why victims react the way they do and the methods traffickers use to get victims to comply. *See* Dkt. No. 77-1 at 6. Officer David brings a local, boots-on-the-ground law enforcement perspective to the subject, including how sex traffickers advertise for customers, how trafficking operates locally, and typical behaviors of traffickers in the area. Officer David can testify on matters through his specific experience on the Vice Unit that Agent Landau cannot do

from her research and interviews alone. For these reasons, the Court finds that Officer David's testimony is not cumulative and meets *Daubert's* relevance criteria.

Finally, Defendant expresses concern that Officer David's testimony will include hearsay or will otherwise be outside the scope of acceptable expert testimony. Dkt. No. 79. The Court notes that it expects all parties to adhere to the Federal Rules of Evidence and it will not enter an order instructing the parties to do so. *See* Judge Heil – Chambers Rules, § 8(d), https://www.oknd.uscourts.gov/jfh-chambers-rules.

For the foregoing reasons, Defendant's objection and motion to exclude expert witness testimony [Dkt. Nos. 68, 74] is OVERRULED and DENIED.

### III. Defendant's Motion to Suppress Evidence [Dkt. No. 69]

Defendant seeks to suppress evidence obtained in the search of the LaCrosse and the Grand Marquis following to his arrest. Dkt. No. 69 at 1. Specifically, Defendant argues that the vehicle searches were in violation of his Fourth Amendment rights because they were not based on probable cause, were not valid as a search incident to arrest, and were not valid as an inventory search. *Id*. at 3-7. The Government responded arguing that the evidence was properly seized under the automobile exception because, based on the totality of the circumstances, officers had probable cause for the search. Dkt. No. 71.

#### a. Automobile Exception

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Therefore, ordinarily, a warrant is required prior to a search. However, there are certain exceptions. One such exception to the Fourth Amendment's warrant requirement is the automobile exception. Under the automobile exception, officers possessing probable cause to believe a car

17

contains contraband may search the car without first obtaining a search warrant. *United States v. Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002). "The rationale for the automobile exception is based on both the inherent mobility of cars (as it is often impracticable to obtain a warrant before a car can be driven away) and the fact that there is a reduced expectation of privacy with motor vehicles." *Id*.

Probable cause to search a vehicle is established if, under the "totality of the circumstances" there is a "fair probability" that the car contains contraband or evidence. *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Though probable cause "is not a high bar," the Government must still present sufficient evidence that "would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020); *United States v. Sparks*, 291 F.3d 683, 687 (10th Cir. 2002).

Immediately prior to the vehicle searches at issue here, law enforcement was staking out the Motel 6 as part of an ongoing prostitution sting. Law enforcement observed Defendant sitting in a parked Buick LaCrosse in the Motel 6 parking lot. As the undercover officer made final arrangements with "Kandi K." to meet in a specific motel room, officers observed Defendant drive his car through the parking lot near the location of the specified motel room and then return to his original parking spot. Defendant then exited the LaCrosse and entered a Grand Marquis also parked in the Motel 6 parking lot. Defendant moved around in the front seat of the Grand Marquis before returning to the LaCrosse. As Defendant returned to the LaCrosse, officers approached

him. Defendant fled. A firearm and two (2) sets of car keys were found near where Defendant was found following a short pursuit.

Officers recognized Defendant from their previous investigations. Specifically, one month prior, law enforcement observed Defendant in the same Motel 6 parking lot during a prostitution sting operation also involving "Kandi K." Additionally, as a result of that operation, officers obtained communications via search warrant which indicated that Defendant was involved in Zickefoose's prostitution and transported her by vehicle to prostitution jobs.

Defendant was a recent occupant of both vehicles just prior to his arrest. Defendant was at the Motel 6 at the same time the undercover officer had arranged to meet "Kandi K." for sex. Defendant's parking and driving pattern in the parking lot, along with the movement between and inside of the two vehicles gave officers reasonable suspicion to stop Defendant for further investigation. Defendant fled when approached by law enforcement and a firearm and two sets of car keys were found near where Defendant was detained. During the course of their investigation, officers had determined that Defendant was involved in Zickefoose's prostitution, including transporting her by vehicle to prostitution jobs. Considering the totality of the circumstances, the Court finds that officers had probable cause to believe there was a fair probability that contraband and evidence would be found in the LaCrosse and the Grand Marquis and, therefore, the automobile exception applies. Because the Court finds that the vehicle searches were proper under the automobile exception, it need not address Defendant's other arguments related to search incident to lawful arrest and inventory search. For the foregoing reasons, Defendant's Motion to Suppress Evidence [Dkt. No. 69] is DENIED.

## CONCLUSION

IT IS THEREFORE ORDERED that:

- Defendant's Omnibus Motion in Limine [Dkt. No. 67] is GRANTED IN PART AND DENIED IN PART as set forth above;

- Defendant's Objection and Motion to Exclude Expert Witness Testimony [Dkt. Nos. 68, 74] is OVERRULED and DENIED; and

- Defendant's Motion to Suppress Evidence [Dkt. No. 69] is DENIED.

DATED this 18th day of July 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE